FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND 2013 NOV 26 P 3: 03

DINGO MOBILE, INC.,                    )
                                       )        U.S. DISTRICT COURT
          Plaintiff,                   )        DISTRICT OF RHODE ISLAND
                                       )        CA 13 - 753 M
     v.                                )        _____CV-_____
                                       )
GOGOCAST, INC., DAVID R. PAOLO,        )
and GREG ARGYLE,                       )        Judge
                                       )
          Defendants.                  )

## VERIFIED COMPLAINT AND PETITION FOR WRIT TO COMPEL ACCESS
## TO BOOKS AND RECORDS

Plaintiff Dingo Mobile, Inc. ("Dingo"), for its Complaint and Petition to Compel Access to Books and Records against Defendants GoGoCast, Inc. ("GoGoCast" or "the Corporation"), David R. Paolo ("Paolo") and Greg Argyle ("Argyle"), states as follows:

### NATURE OF THE ACTION

1.   Dingo is a shareholder of the Corporation, holding 882,000 common shares of stock.

2.   Defendants Corporation and Officers Paolo and Argyle have refused to provide access to documents and books and records of the Corporation to shareholder Dingo despite Dingo's proper written demand and purpose.

3.   This action seeks a writ to compel access to Defendants' books and records, and other documents, pursuant to §7-1.2-1502 and §7-1.2-1402 of the Rhode Island Business Corporation Act (the "RIBCA"), and §§ 1600, 1601, and 1603-05 of the California Corporations Code (the "Cal. Corp. Code"), as well as damages in excess of $75,000 arising from Defendants' violations of said statutes and the Corporation's default on a Note due and payable to Dingo in the amount of $245,000.00.

## PARTIES

4.      Plaintiff Dingo is a corporation organized under the laws of Canada, with its principal place of business in Toronto, Canada.

5.      Defendant GoGoCast is a corporation organized under the laws of the State of California, with its principal place of business in Cranston, Rhode Island, and is authorized under the laws of Rhode Island to conduct business as an out-of-state corporation in Rhode Island.

6.      Defendant Paolo is the CEO, President and Director of the Corporation, and is also a shareholder of the Corporation.

7.      Defendant Paolo is a resident of and domiciled in the State of Rhode Island, and is otherwise not a citizen or subject of a foreign state.

8.      Defendant Argyle is the COO and a Director of the Corporation and is also a shareholder of the Corporation.

9.      Defendant Argyle is a resident of and domiciled in the State of Rhode Island, and is otherwise not a citizen or subject of a foreign state.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this Complaint and Petition under 28 U.S.C. § 1332(a)(2).

11.      28 U.S.C. § 1332(a) confers subject matter jurisdiction over cases where the matter in controversy is greater than $75,000 and the dispute is between citizens of a state and citizens or subjects of a foreign state;

12.      For purposes of 28 U.S.C. § 1332(a), Plaintiff is a citizen of a foreign state, Canada.

13.      For purposes of 28 U.S.C. § 1332(a), each Defendant is a citizen of a state.

14.    Accordingly, this matter presents an action between citizens of a state and a citizen of a foreign state.

15.    Therefore, because complete diversity exists and the amount in controversy exceeds $75,000.00, this Court has federal subject matter jurisdiction over the parties.

**Personal Jurisdiction**

16.    This Court has personal jurisdiction over GoGoCast because Defendant GoGoCast is authorized to do business in Rhode Island, where it is headquartered and where it conducts regular, systematic, and continuous business, and because the acts complained of (failure to provide access to Corporation records) occurred in Rhode Island and because records sought are present in Rhode Island.

17.    This Court has personal jurisdiction over Defendants Paolo and Argyle because said Defendants live and work in Rhode Island, preside over and control the operations as Directors and Officers of the Corporation in Rhode Island, conduct regular, systematic, and continuous business, and because the acts complained of (failure to provide access to Corporation records) occurred in Rhode Island and because records in the possession and control of Defendants Paolo and Argyle are present in Rhode Island.

**Venue**

18.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) in that the cause of action set forth herein has arisen and occurred in substantial part in the District of Rhode Island given that the books, records, and other documents being petitioned for are located in Rhode Island.

## FACTUAL ALLEGATIONS

19.     Dingo is in the business of developing and maintaining mobile advertising software with geo-social, time-sensitive components that allow marketers to target users based on time and place.

20.     According to the GoGoCast website, GoGoCast's business "enables advertisers to directly communicate with their clientele using an aggregated network of digital media combined with audience targeted content.  GoGoCast delivers direct-to-consumer advertising in over 4,000 locations.  With GoGoCast, [advertisers] can advertise [their] products at the point of sale without a long lead time or expensive production costs."

21.     From February 27, 2009 to October 16, 2012, Dingo, developed and created highly valuable and proprietary mobile software that allowed marketers to deliver time- and location-sensitive advertising and promotional content to consumers, called the Dingo Mobile Application and the GoGo Mobile Platform, which allowed retailers and vendors to deliver time- and location-sensitive deals, discounts, and special offers to their customers.

22.     In February 2012, Dingo and GoGoCast entered into a License Agreement allowing GoGoCast to use Dingo's GoGo Mobile Platform subject to the terms of the License Agreement.

23.     In July 2012, Dingo and GoGoCast entered into a Statement of Intent concerning the acquisition of Dingo's assets, including the Dingo Mobile Application and the GoGo Mobile Platform and associated intellectual property, for a Purchase Price of $2,500,000.00.

24.     A true and correct copy of the Statement of Intent is attached hereto as Exhibit A.

25.     Pursuant to the Statement of Intent, the Purchase Price for Dingo's assets were to be payable in the form of a Note for $245,000, $50,000 in cash at Closing, and $2,205,000 in GoGoCast Common Stock based upon a valuation of $2.50 per share (882,000 shares).

26. In October 2012, Dingo and GoGoCast entered into an Asset Acquisition Agreement (the "Agreement") effective October 16, 2012, pursuant to which GoGoCast contracted to acquire certain Purchased Assets, including software, patents and intellectual property associated with Dingo Mobile.

27. A true and correct copy of the Agreement is attached hereto as Exhibit B.

28. In exchange for the Purchased Assets, GoGoCast was obligated under Section 2.1 of the Agreement to pay Dingo $50,000 at Closing, to pay Dingo $245,000 on or before September 30, 2013 pursuant to a Note (the "Note"), and to issue to Dingo 882,000 shares of Common Stock.

29. The shares issued to Dingo represented $2,205,000 of the value Dingo was entitled to receive under the Agreement, in addition to the business expectations as a significant shareholder going forward.

30. GoGoCast paid $50,000 to Dingo as required under the Agreement.

31. GoGoCast failed to issue certificates for the 882,000 shares to Dingo until April 2013, after Dingo made repeated demands for this documentation of the transaction as required under the Agreement.

32. A true and correct copy of the Certificate for the 882,000 shares of Common Stock held by Dingo is attached hereto as Exhibit C.

33. Notwithstanding repeated demands for the Note and payment of $245,000 on or before September 30, 2013 as required under the Agreement, GoGocast has failed to pay Dingo $245,000 as required under the Agreement, and has refused, additionally, to provide Dingo with a separate Note as required by the Agreement.

34. GoGoCast was also contractually required to deliver to Dingo the consent of all shareholders of the Corporation (Section 7.2 of the Agreement) and a certified resolution of the

Board of Directors of the Corporation (Section 9.2 of the Agreement) approving of the Agreement and transaction with Dingo, and GoGoCast has refused to provide these documents.

**Defendant GoGoCast's Failure to Provide Information and Access to Books and Records**

35.    Since providing Dingo with the Certificate for 882,000 shares of Common Stock, Defendants have repeatedly refused to provide Dingo with information, books or records concerning the business of the Corporation.

36.    Defendants have not provided information to Dingo about significant events including but not limited to material transactions being negotiated by Officers and Directors, litigation adversely affecting the business and outlook of the company, and equipment failures.

37.    Defendants Paolo and Argyle have called and conducted shareholder meetings and shareholder telephone briefings about material transactions and Company plans but have purposefully excluded Dingo.

38.    The Corporation has not provided notice or held any annual Directors and Shareholder meetings since Dingo became a shareholder over a year ago.

39.    Dingo's inquiries about Corporation business have been rebuked by Paolo and Argyle, whom have advised that multimillion dollar deals being considered by Paolo and Argyle are "confidential" to an extent that Dingo should not be told anything at all.

40.    Paolo has repeatedly stated and claimed the Corporation's bylaws give him the unfettered right to conduct all Corporation business without notice or approval of any person, yet Defendants have refused to even provide Dingo with a copy of the bylaws or a current list of shareholders.

41.    Defendants have licensed or otherwise transferred the Dingo intellectual property assets to a company controlled by and owned by Defendant Argyle and other directors and officers of the Corporation, doing business under the name "Rsportz," for a minimal payment of

$25,000 or no payment without notice to shareholders, and refuse to provide details or copies of the related documents which conferred great benefit upon certain individual directors and officers and little or no known benefit to the Corporation.

## CLAIMS FOR RELIEF

## COUNT I (AGAINST ALL DEFENDANTS)

### ACCESS TO CORPORATION BOOKS AND RECORDS UNDER THE RHODE ISLAND BUSINESS CORPORATION ACT

42.     Plaintiff repeats and restates Paragraphs 1-41 above as if fully set forth herein.

43.     At all times pertinent, §7-1.2-1402 of RIBCA has provided in pertinent part, as follows:

> A foreign corporation which has received a certificate of authority under this chapter ... enjoys the same, but no greater, rights and privileges as a domestic corporation ... is subject to the same duties, restrictions, penalties, and liabilities now or subsequently imposed upon a domestic corporation of like character.

44.     GoGoCast is a foreign corporation which has received a certificate of authority to conduct business in Rhode Island pursuant to §7-1.2-1401, and therefore is subject to RIBCA.

45.     At all times pertinent, §7-1.2-1502 of the RIBCA was in force, setting forth the duties and obligations of Rhode Island Corporations concerning books and records:

> (a)     Each corporation shall keep correct and complete books and records of account, keep minutes of the proceedings of its shareholders and of the board of directors and committees of the board, and shall also keep at its registered office or principal place of business, legal counsel's office, or at the office of its transfer agent or registrar, a record of its shareholders giving the names and addresses of all shareholders and the number and class of the shares held by each. Any books, records, and minutes may be in written form or any other form capable of being converted into written form within a reasonable time.

> (b)     Any director, shareholder or holder of voting trust certificates for shares of a corporation, upon written demand stating the purpose for the demand, has the right to examine, in person, or by agent or attorney, at any reasonable time or times, for

any proper purpose, its relevant books and records of account, minutes, and record of shareholders and to make extracts from those books and records of account, minutes, and record of shareholders.

*       *       *

(e)     Upon the written request of any director, shareholder or holder of voting trust certificates for shares of a corporation, the corporation shall mail to the director, shareholder or holder of voting trust certificates its most recent financial statements showing in reasonable detail its assets and liabilities and the results of its operations.

46.     GoGoCast, subject to the provisions above under §7-1.2-1502 of the RIBCA as a foreign corporation bound by the RIBCA, has failed to comply with its duties and obligations as a Rhode Island Corporation.

47.     On October 11, 2013, Dingo, by and through its attorneys, delivered a conforming request pursuant to §7-1.2-1502(a)(b)(c) and (e) and §1402 in writing to the Corporation, receipt of which was acknowledged, requesting access to examine and copy, through its attorney, at a reasonable time convenient for the Corporation, certain relevant books and records of account, minutes, and the record of shareholders, for a proper purpose. A true and correct copy of which is attached hereto as Exhibit D.

48.     All or some of Dingo's stated purposes in the October 11, 2013 request are a proper purpose under RIBCA supporting a request for access:

To the extent that any of these requests above require that the request be made for a purpose reasonably related to Dingo's interests as a shareholder, Dingo, as a holder of a significant number of shares in the Corporation is considered a beneficial owner of all of the assets of the Corporation, and is entitled to obtain reliable information concerning the financial condition of the Corporation, the manner in which its business has been conducted and its affairs have been managed, and whether those to whom they have entrusted same have acted faithfully and efficiently in the interests of the Corporation. In addition, the Corporation and its other shareholders have conducted meetings

without providing notice to Dingo; Dingo has not received any information or reports required by the California Corporations Code; the Corporation has sent monthly newsletters to shareholders which were not received by Dingo; and Dingo's informal requests for access to information have not to date been accepted by the Corporation.

Dingo has no purpose to sell any list or information received, and shall limit its use of such information to attend to its affairs as a shareholder relative to the affairs of the Corporation. To the extent desired and reasonable, Dingo is willing to accept reasonable non-disclosure or confidentiality requirements provided same will not jeopardize the timeline of five (5) business days. Dingo is further amenable to receiving the listed information in electronic format to the extent such transmission is mutually desirable.

Exhibit D, p. 4.

49.   Defendants failed to respond to the October 11, 2013 demand for access under RIBCA, leading Dingo officers to advise Defendants Paolo and Argyle that if their simple statutory requests for documentation and access to records were ignored, they would be forced to authorize counsel to petition the court for access.

50.   On or about October 25, 2013, Defendants verbally agreed that they were required to provide access to the documents requested and records as requested and were prepared to do so on or before November 8, 2013. This led to issuance of correspondence dated October 25, 2013, a true and correct copy of which is attached hereto as Exhibit E.

51.   On October 28, 2013, Defendant Argyle signed and returned the letter agreement whereby Defendants agreed to provide access and copies in response to Dingo's demand for request for records. A true and correct copy of the letter agreement signed by Mr. Greg Argyle and returned on October 28, 2013 is attached hereto as Exhibit F.

52.   Dingo agreed to defer taking action for access to records based upon Defendants' agreement to provide the access and copies of records requested on or before November 8, 2013.

53. Defendants failed to provide a single document or any access to any records notwithstanding their express agreement to do so.

54. Defendants provided the letter agreement in bad faith, as not a single record or moment of access was provided on or before November 8, 2013 or to date.

55. On November 19, 2013, Defendant Paolo refused, in a call with counsel for Dingo, to provide a copy of a single document, to provide access, or to schedule any time for Dingo or its designated counsel to inspect records.

56. Because Defendants purposefully refuse to provide any information, Dingo does not know who the other shareholders are, the percentages or ownership, types of shares, how many shares the Defendants claimed to have issued or even the most basic information necessary for a shareholder to understand its position or to assess any potential acquisition of GoGoCast or other significant transaction.

57. Defendants Paolo and Argyle scheme to keep Dingo from discovering basic corporate information and information about allegedly "confidential" negotiations and potential transactions which they are conducting is highly egregious and unusual, such that Dingo believes Defendants do not want Dingo to have any information about transactions upon which to object, because they wish to isolate Dingo from having discussions with other shareholders, and because they are likely engaged in self-dealing.

58. Pursuant to RIBCA and in view of the Defendants' strategic and complete deprivation of information, Dingo should be granted access to or copies of the following documents:

a) All records of the shareholders ("Shareholders" as used herein means holders of all shares and types of stock the Corporation has issued) names and addresses and shareholdings, and class of shares ("Shares" as used herein means shares of any and all types which the Corporation has issued) from inception to date;

b)      A list of all shareholders' names and addresses, their shareholdings and price or consideration for issuance of the shares;

c)      The Corporation's bylaws or restated bylaws and all amendments to them currently in effect;

d)      All documents relating to authorization or issuance of shares, including resolutions adopted by the Corporation's board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

e)      The minutes of all shareholders' meetings, and records of all action taken by shareholders with or without a meeting, from inception to date;

f)      The minutes of all directors' meetings, and records of all action taken by directors with or without a meeting, from inception to date;

g)      All written communications to shareholders of the Corporation generally within the past 3 years, including all reports and accompanying material for the past 3 years, such reports containing a balance sheet as of the end of fiscal year, an income statement, a statement of cash flow for that fiscal year, accompanied by a report thereon of independent accountants or, if there is no report, the certificate of an authorized officer of the Corporation that the statements were prepared without audit from the books and records of the Corporation. If no annual report for the last fiscal year has been sent to shareholders, Dingo requests that the Corporation provide the financial statement. This request also includes, is not limited to, any monthly newsletters which have been sent to shareholders.

h)      The Corporation's most recent annual report delivered to the Secretary of State under §7-1.2-1501. If no report has been filed for the most recent year, Dingo requests that the Corporation provide all information necessary to be included in the report, as well as the most recent annual report;

i)      A list of the names and business addresses of all directors and officers from January 1, 2012 to the present;

j)      All records reflecting approval and authorization of the Asset Acquisition Agreement dated October 16, 2012 by and between the Corporation and Dingo et al., including but not limited to: The consent of all shareholders of the Corporation (Section 7.2 of the Agreement); The certified resolution of the Board of Directors of the Corporation (Section 9.2 of the Agreement) supporting schedules reasonably necessary to verify any line item on those statements for the current fiscal year and two previous years; and the Promissory Note in the amount of $245,000 due September 30, 2013 (Section 2.1 (ii) of the Agreement).

k)      Accounting records reflecting all assets and liabilities of Corporation;

l)     With respect to any dividends issued to any class of shares, all documents, resolutions, reports, votes, memos, data considered, and communications (including email) relating to or reflecting said dividend, and the amounts paid to each class of shares or holder.

m)     With respect to the purchase or redemption of any class of shares, all documents, studies, resolutions, reports, votes, memos, data considered, and communications (including email relating to or reflecting said purchase or redemption, and the amounts paid to each holder.

n)     Full and complete copies of any Director and Officer's insurance policies and certificates of insurance.

o)     With respect to any transactions with interested officers or directors (or their respective companies), any and all statements of disclosure, and all documents, agreements, resolutions, consents in lieu of meeting, meeting minutes, reports, votes, opinions, professional advice, memos, data considered, and communications (including email) relating to or reflecting said transactions. This request specifically includes, but is not limited to, any license or allowed use by any third party of any of the Intellectual Property transferred to the Corporation by Dingo under the Agreement or documents reflecting such use.

p)     All Federal and State income tax returns for the Corporation and any subsidiary from 2010 to present.

q)     Any disclosures and notices sent to shareholders in compliance with state or federal securities laws.

r)     All voting agreements for any class of shares.

s)     All proxies, revocable or irrevocable, pertaining to any class of shares.

t)     Any records reflecting the current or historic valuation of the Corporation or shares of the Corporation or share price, including but not limited to accounting records, loan applications, stock warrants and options, transactions involving transfer or assignment of shares;

u)     Any memorandum of offering or like documents being utilized to raise money or sell or transfer shares, and any record related to how raised funds shall be utilized by the Corporation.

v)     The Corporation's records related to any license or allowed use by any third party of any of the Intellectual Property transferred to the Corporation by Dingo under the Agreement.

w)     The Corporation's business contracts to supply services with all current customers or entities persons having been customers within the last three years, including but not limited to the commercial agreement(s) with Alex + Ani or Seven Swords.

x)    Records of any lawsuits filed by or against the Corporation and any judgments or settlement agreements related thereto.

y)    Record of current or proposed budget for operations.

z)    Letters of Intent, Memoranda, agreements or draft agreements reflecting any acquisition or proposed acquisition of GoGoCast or its assets by a third party or any acquisition or proposed acquisition by GoGoCast of a third party or its assets or any other material transaction under discussion or negotiation by Defendants or their agents.

See October 11, 2013 correspondence, Exhibit D.

59.    Plaintiff has satisfied all requirements of §7-1.2-1502(b) by making written demand, stating the purpose for the demand, requesting the right to examine by agent or attorney, at a reasonable time, for any proper purpose, relevant books and records of account, minutes, and record of shareholders of the Corporation and to make extracts from those books and records of account, minutes, and record of shareholders.

60.    The Defendants have refused and failed to abide by the statutory requirements of RIBCA, under circumstances which give rise to a high degree of concern by shareholder Dingo concerning the manner in which the Corporation's business has been conducted and its affairs have been managed, and whether the Officers and Directors have acted faithfully and efficiently in the interests of the Corporation.

61.    Without intervention of this court, Defendants will not provide access to documents and information to Dingo as required by statute and to the degree necessary to comport with their fiduciary duties to all shareholders, and Dingo will be irreparably harmed.

62.    Being completely shut out of any information from the Corporation leaves Dingo completely unable to monitor or protect its considerable interests in the Corporation.

**WHEREFORE,** Plaintiff Dingo respectfully requests that this Court find in its favor and against Defendants as follows:

I.      Enter a writ of mandamus or other order of this court against all Defendants requiring each Defendant to allow and provide immediate inspection and access to GoGoCast's documents and information requested in Paragraph 58 of Count I, subparagraphs (a)-(z);

II.     Award Plaintiff attorneys' fees and costs;

III.    Granting temporary and permanent injunctive relief prohibiting the Corporation and its officers and directors including Paolo and Argyle from conducting any of the following prior to compliance with the order entered requiring access and prior to 10 business days written notice to all shareholders: entering into any agreement for the sale of GoGoCast or its assets; entering into any agreement for the purchase of another entity or its assets; issuing or authorizing any shares of stock, options, or granting other pecuniary interest in the Corporation; incurring indebtedness or obligation related to any potential transaction.

IV.     Such other relief as this Court deems just and proper.

## COUNT II (ALL DEFENDANTS)

## STATUTORY DAMAGES FOR VIOLATION OF §7-1.2-1502

63.     Plaintiff repeats and restates Paragraphs 1-62 above as if fully set forth herein.

64.     At all times pertinent, §7-1.2-1502(c) of RIBCA expressly provided that any officer or agent who refuses access to any shareholder to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, are liable, as damages to the shareholder, in the amount of ten percent (10%) of the value of the shares owned by the shareholder, in addition to any other damages or remedies:

> (c)     Any officer or agent who, or a corporation which, refuses to allow any shareholder or holder of voting trust certificates, or his or her agent or attorney, to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, is liable to the shareholder or holder of voting trust certificates in a penalty of ten percent (10%) of the value of the shares owned by the shareholder, or in respect of which the voting trust certificates are issued, in addition to any other damages or remedy afforded him or her by law....

§7-1.2-1502(c).

65. Each Defendant has flat out refused to provide access to any of the aforementioned records, and each is subject to a penalty of 10% of the value of the Corporation's shares owned by Dingo.

66. The valuation placed upon Dingo's shares by GoGoCast under the Statement of Intent and the Agreement was $2,205,000.

67. Each Defendant is liable to Dingo under §7-1.2-1502(c) for damages in the amount of $220,500 representing 10% of Defendants' valuation of the 882,000 shares of the Corporation held by Dingo.

**WHEREFORE,** Plaintiff Dingo respectfully requests that this Court find in its favor and against each Defendant as follows:

I. Enter Judgment in favor of Dingo and against GoGoCast in the amount of $220,500, plus costs, prejudgment interest dating to October 11, 2013, post-judgment interest, and Plaintiff's attorneys fees.

II. Enter Judgment in favor of Dingo and against Defendant Paolo in the amount of $220,500, plus costs, prejudgment interest dating to October 11, 2013, post-judgment interest, and Plaintiff's attorneys fees.

III. Enter Judgment in favor of Dingo and against Defendant Argyle in the amount of $220,500, plus costs, prejudgment interest dating to October 11, 2013, post-judgment interest, and Plaintiff's attorneys fees.

IV. Such other relief as this Court deems just and proper

## COUNT III (ALL DEFENDANTS)

### ACCESS TO CORPORATION BOOKS AND RECORDS UNDER THE CALIFORNIA CORPORATIONS CODE

68. Plaintiff repeats and restates Paragraphs 1-67 above as if fully set forth herein.

69. At all times pertinent, § 1600(a) of the California Corporations Code provided that a shareholder holding at least 5 percent in the aggregate of the outstanding voting shares possesses the absolute right to do either or both of the following within 5 business days:

(1)    Inspect and copy the record of shareholders' names and addresses and shareholdings during usual business hours upon five business days' prior written demand upon the corporation, or

(2)    Obtain from the transfer agent for the corporation, upon written demand and upon the tender of its usual charges for such a list (the amount of which charges shall be stated to the shareholder by the transfer agent upon request), a list of the shareholders' names and addresses, who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which it has been compiled or as of a date specified by the shareholder subsequent to the date of demand. The list shall be made available on or before the later of five business days after the demand is received or the date specified therein as the date as of which the list is to be compiled. A corporation shall have the responsibility to cause its transfer agent to comply with this subdivision.

§ 1600(a).

70.     As owner of 882,000 common shares of capital stock of the Corporation, Defendants represented to Dingo in connection with the Agreement that it owned over 5% of the issued shares of GoGoCast.

71.     Defendants have never provided any notice of issuance of any additional shares to Dingo.

72.     Dingo owns at least 5% of the duly authorized and issued shares of GoGoCast.

73.     §1601 of the Cal. Corp. Code further provides that any shareholder, for a purpose reasonably related to such holder's interests as a shareholder, may access the accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board, and that the right of inspection extends to the records of each subsidiary of a corporation:

(a)    The accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any such records in this state or having its principal executive office in this state, shall be open to inspection upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during

-16-

usual business hours, for a purpose reasonably related to such holder's interests as a shareholder or as the holder of such voting trust certificate. The right of inspection created by this subdivision shall extend to the records of each subsidiary of a corporation subject to this subdivision.

(b)     Such inspection by a shareholder or holder of a voting trust certificate may be made in person or by agent or attorney, and the right of inspection includes the right to copy and make extracts. The right of the shareholders to inspect the corporate records may not be limited by the articles or bylaws.

§1601(a) -(b).

74.     As a Corporation organized under the laws of California, GoGoCast is subject to the California Corporations Code Provisions above.

75.     On October 2, 2013, Dingo, by and through its attorneys, delivered a conforming request in writing pursuant to Cal. Corp. Code §1600(a), (c) and (d), §1601(a) and (b), and §1501, §1509 and §2207, receipt of which was acknowledged, requesting access to examine and copy, through its attorney, at a reasonable time convenient for the Corporation, certain relevant books and records of account, minutes, and the record of shareholders, for a proper purpose. A true and correct copy of Dingo's written request dated October 2, 2013 is attached hereto as Exhibit G.

76.     All or some of Dingo's stated purposes in the October 2, 2013 request are a proper purpose under the Cal. Corp. Code supporting a request for access:

To the extent that any of these requests above require that the request be made for a purpose reasonably related to Dingo's interests as a shareholder, Dingo, as a holder of a significant number of shares in the Corporation is considered a beneficial owner of all of the assets of the Corporation, and is entitled to obtain reliable information concerning the financial condition of the Corporation, the manner in which its business has been conducted and its affairs have been managed, and whether those to whom they have entrusted same have acted faithfully and efficiently in the interests of the Corporation. In addition, the Corporation and its other shareholders have conducted meetings

-17-

without providing notice to Dingo; Dingo has not received any information or reports required by the California Corporations Code; the Corporation has sent monthly newsletters to shareholders which were not received by Dingo; and Dingo's informal requests for access to information have not to date been accepted by the Corporation.

Dingo has no purpose to sell any list or information received, and shall limit its use of such information to attend to its affairs as a shareholder relative to the affairs of the Corporation. To the extent desired and reasonable, Dingo is willing to accept reasonable non-disclosure or confidentiality requirements provided same will not jeopardize the timeline of five (5) business days. Dingo is further amenable to receiving the listed information in electronic format to the extent such transmission is mutually desirable.

Exhibit G, p. 4.

77.     Defendants failed to respond to the October 2, 2013 demand for access under the Cal. Corp. Code, leading Dingo officers to advise Defendants Paolo and Argyle that if their simple statutory requests for documentation and access to records were ignored, they would be forced to authorize counsel to petition the court for access.

78.     On October 11, 2013, Dingo, by and through its attorneys, delivered a follow up request in writing pursuant to Cal. Corp. Code §1600(a), (c) and (d), §1601(a) and (b), and §1501, §1509 and §2207 for access to Defendants' books and records. A true and correct copy of which is attached hereto as Exhibit H.

79.     On or about October 25, 2013, Defendants verbally agreed that they were required to provide access to the documents requested and records as requested and were prepared to do so on or before November 8, 2013. This led to issuance of correspondence dated October 25, 2013, Exhibit E.

80.     On October 28, 2013, Defendant Argyle signed and returned the letter agreement whereby Defendants agreed to provide access and copies in response to Dingo's demand for

-18-

request for records. Letter agreement signed by Mr. Greg Argyle and returned on October 28, 2013, Exhibit F.

81.     Pursuant to §1604, in any action or proceeding under §1600 or §1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder or holder of a voting trust certificate for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceeding.

82.     Defendants refusal to turn over a single document to a shareholder holding 882,000 shares valued by Defendants at over $2 Million Dollars is unjustified.

83.     Failure of a California domestic corporation such as GoGoCast to comply with §1600(a) further allows the shareholder to obtain delay of any pending shareholder meeting.

> (b)     Any delay by the corporation or the transfer agent in complying with a demand under subdivision (a) beyond the time limits specified therein shall give the shareholder or shareholders properly making the demand a right to obtain from the superior court, upon the filing of a verified complaint in the proper county and after a hearing, notice of which shall be given to such persons and in such manner as the court may direct, an order postponing any shareholders' meeting previously noticed for a period equal to the period of such delay. Such right shall be in addition to any other legal or equitable remedies to which the shareholder may be entitled.
>
> §1600(b).

84.     Pursuant to Cal. Corp. Code and in view of the Defendants' strategic and complete deprivation of information, Dingo should be granted access to or copies of the following documents:

> a)     All records of the shareholders ("Shareholders" as used herein means holders of all shares and types of stock the Corporation has issued) names and addresses and shareholdings, and class of shares ("Shares" as used herein means shares of any and all types which the Corporation has issued) from inception to date;

b)      A list of all shareholders' names and addresses, their shareholdings and price or consideration for issuance of the shares;

c)      The Corporation's bylaws or restated bylaws and all amendments to them currently in effect;

d)      All documents relating to authorization or issuance of shares, including resolutions adopted by the Corporation's board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

e)      The minutes of all shareholders' meetings, and records of all action taken by shareholders with or without a meeting, from inception to date;

f)      The minutes of all directors' meetings, and records of all action taken by directors with or without a meeting, from inception to date;

g)      All written communications to shareholders of the Corporation generally within the past 3 years, including all reports and accompanying material furnished under §1501 for the past 3 years, such reports containing a balance sheet as of the end of fiscal year, an income statement, a statement of cash flow for that fiscal year, accompanied by a report thereon of independent accountants or, if there is no report, the certificate of an authorized officer of the Corporation that the statements were prepared without audit from the books and records of the Corporation. If no annual report for the last fiscal year has been sent to shareholders, pursuant to §1501(c), Dingo requests that the Corporation provide the financial statement. This request also includes, is not limited to, any monthly newsletters which have been sent to shareholders.

h)      The Corporation's most recent annual report delivered to the Secretary of State under §1502. If no report has been filed for the most recent year, Dingo requests that the Corporation provide all information necessary to be included in the report, as well as the most recent annual report;

i)      A list of the names and business addresses of all directors and officers from January 1, 2012 to the present;

j)      All records reflecting approval and authorization of the Asset Acquisition Agreement dated October 16, 2012 by and between the Corporation and Dingo et al., including but not limited to: The consent of all shareholders of the Corporation (Section 7.2 of the Agreement); The certified resolution of the Board of Directors of the Corporation (Section 9.2 of the Agreement) supporting schedules reasonably necessary to verify any line item on those statements for the current fiscal year and two previous years; and the Promissory Note in the amount of $245,000 due September 30, 2013 (Section 2.1 (ii) of the Agreement).

k)      Accounting records reflecting all assets and liabilities of Corporation;

l)      With respect to any dividends issued to any class of shares, all documents, resolutions, reports, votes, memos, data considered, and communications (including email) relating to or reflecting said dividend, and the amounts paid to each class of shares or holder.

m)      With respect to the purchase or redemption of any class of shares, all documents, studies, resolutions, reports, votes, memos, data considered, and communications (including email relating to or reflecting said purchase or redemption, and the amounts paid to each holder.

n)      Full and complete copies of any Director and Officer's insurance policies and certificates of insurance.

o)      With respect to any transactions with interested officers or directors (or their respective companies), any and all statements of disclosure, and all documents, agreements, resolutions, consents in lieu of meeting, meeting minutes, reports, votes, opinions, professional advice, memos, data considered, and communications (including email) relating to or reflecting said transactions. This request specifically includes, but is not limited to, any license or allowed use by any third party of any of the Intellectual Property transferred to the Corporation by Dingo under the Agreement.

p)      All Federal and State income tax returns for the Corporation and any subsidiary from 2010 to present.

q)      Any disclosures and notices sent to shareholders in compliance with state or federal securities laws.

r)      All voting agreements for any class of shares.

s)      All proxies, revocable or irrevocable, pertaining to any class of shares.

t)      Any records reflecting the current or historic valuation of the Corporation or shares of the Corporation or share price, including but not limited to accounting records, loan applications, stock warrants and options, transactions involving transfer or assignment of shares;

u)      Any memorandum of offering or like documents being utilized to raise money or sell or transfer shares, and any record related to how raised funds shall be utilized by the Corporation.

v)      The Corporation's records related to any license or allowed use by any third party of any of the Intellectual Property transferred to the Corporation by Dingo under the Agreement.

w)      The Corporation's business contracts to supply services with all current customers or entities persons having been customers within the last three years, including but not limited to the commercial agreement(s) with Alex + Ani or Seven Swords.

x)    Records of any lawsuits filed by or against the Corporation and any judgments or settlement agreements related thereto.

y)    Record of current or proposed budget for operations.

z)    Letters of Intent, Memoranda, agreements or draft agreements reflecting any acquisition or proposed acquisition of GoGoCast or its assets by a third party or any acquisition or proposed acquisition by GoGoCast of a third party or its assets or any other material transaction under discussion or negotiation by Defendants or their agents.

See October 2, 2013 correspondence, Exhibit G.

85.    Plaintiff has satisfied all requirements of §1600 and §1601 by making written demand, stating the purpose for the demand, requesting the right to examine by agent or attorney, at a reasonable time, for any proper purpose, relevant books and records of account, minutes, and record of shareholders of the Corporation and to make extracts from those books and records of account, minutes, and record of shareholders.

86.    The Defendants have refused and failed to abide by the statutory requirements of the Cal. Corp. Code, under circumstances which give rise to a high degree of concern by shareholder Dingo concerning the manner in which the Corporation's business has been conducted and its affairs have been managed, and whether the Officers and Directors have acted faithfully and efficiently in the interests of the Corporation.

87.    Without intervention of this court, Defendants will not provide access to documents and information to Dingo as required by statute and to the degree necessary to comport with their fiduciary duties to all shareholders, and Dingo will be irreparably harmed.

88.    Being completely shut out of any information from the Corporation leaves Dingo completely unable to monitor or protect its considerable interests in the Corporation.

**WHEREFORE,** Plaintiff Dingo respectfully requests that this Court find in its favor and against Defendants as follows:

I.    Enter a writ of mandamus or other order of this court against all Defendants requiring each Defendant:

a)   to allow and provide immediate inspection and access to GoGoCast's documents and information as set forth in Paragraph 84 of Count III, subparagraphs (a)-(z), including any subsidiary of GoGoCast;

b)   pursuant to §1605, if any record subject to inspection pursuant to this chapter is not maintained in written form, cause the corporation at its expense to make such record available in written form; and

c)   pursuant to §1600(b), to delay any shareholder meeting or action required to be taken by shareholders for a period equal to the period of such delay in providing records access to Dingo.

II.   Award Plaintiff attorneys' fees and costs;

III.   Granting temporary and permanent injunctive relief prohibiting the Corporation and its officers and directors including Paolo and Argyle from conducting any of the following prior to compliance with the order entered requiring access and prior to 10 business days written notice to all shareholders: entering into any agreement for the sale of GoGoCast or its assets; entering into any agreement for the purchase of another entity or its assets; issuing or authorizing any shares of stock, options, or granting other pecuniary interest in the Corporation; incurring indebtedness or obligation related to any potential transaction.

IV.   Such other relief as this Court deems just and proper.

## COUNT IV (DEFENDANT GOGOCAST)

### ACTION FOR NONPAYMENT
### OF NOTE IN THE AMOUNT OF $245,000

89.   Plaintiff repeats and restates Paragraphs 1-88 above as if fully set forth herein.

90.   §9-1-1 of the Rhode Island Statutes and Codes provides a cause of action on a promissory note.

91.   The Note and terms thereof set forth in Section 2.1(ii) of the Agreement is enforceable as a note under §9-1-1 of the Rhode Island Statutes and Codes.

92.   Pursuant to Section 2.1 of the Agreement, the consideration to be delivered by the Corporation to Dingo in exchange for the purchased assets included:

(ii)   $245,000 US by way of Buyers promissory note, bearing no interest until after default and falling due on September 30, 2013, provided that if the Buyer obtains financing in the amount of

5% or more of its pre-money valuation at the time of such financing, this promissory note will fall due on the date of the funding of the financing.

93.     Section 2.1 of the Agreement provides further that "the promissory notes mentioned in this Section 2.1 shall bear interest after default and judgment at the rate of 10% per annum, compounded annually."

94.     The Note was due to be paid not later than September 30, 2013 in the amount of $245,000 US.

95.     Dingo has made demand for payment, and the Note remains unsatisfied.

96.     Dingo is entitled to judgment on the Note in the amount of $245,000, prejudgment interest of 10% per annum commencing October 1, 2013 as well as post-judgment interest of 10% per annum.

**WHEREFORE,** Plaintiff Dingo respectfully requests that this Court find in its favor and against Defendants as follows:

I.      Judgment in favor of Dingo and against GoGoCast in the amount of $245,000 with prejudgment and post-judgment interest of 10% per annum commencing October 1, 2013, with costs.

<u>**COUNT V (DEFENDANT GOGOCAST)**</u>

<u>**BREACH OF SECTION 2.1 OF THE AGREEMENT**</u>

97.     This cause of action is brought in the alternative only to Count IV.

98.     Plaintiff repeats and restates Paragraphs 1-96 above as if fully set forth herein

99.     Pursuant to the Agreement, Dingo tendered the Purchased Assets under the Agreement and otherwise fully performed its obligations under the Agreement.

100.    Defendant GoGoCast's failure to pay Dingo $245,000 US on or before September 30, 2013 is a breach of Section 2.1 of the Agreement.

101.    Dingo has suffered damages for such breach in the amount of $245,000 US.

**WHEREFORE,** Plaintiff Dingo respectfully requests that this Court find in its favor and

against Defendants as follows:

I.      Judgment in favor of Dingo and against GoGoCast in the amount of $245,000
with prejudgment and post-judgment interest of 10% per annum commencing October 1, 2013,
with costs

## PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNTS IV AND V AND OTHERWISE AS TO ALL ISSUES SO TRIABLE BY JURY AT LAW

Dated:  November 26, 2013                Respectfully submitted,

                                          By:  /s/ William M. Gantz
                                                *Attorney for Plaintiff Dingo Mobile, Inc.*
                                                William M. Gantz (RI#8792)
                                                Dentons US LLP
                                                101 Federal Street, Suite 2750
                                                Boston, MA 02110
                                                (617) 235-6816
                                                (617) 235-6899 (Facsimile)
                                                bill.gantz@dentons.com

81420764

-25-

## VERIFICATION

I, Josh Hudson, Co-Founder, Chief Marketing Officers of Dingo Mobile, Inc. (Dingo")
am authorized to execute this verification on its behalf.  I have reviewed the facts set forth in the
VERIFIED COMPLAINT AND PETITION FOR WRIT TO COMPEL ACCESS TO BOOKS
AND RECORDS.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the
laws of the United States of America that the foregoing is true and correct.


Dated: November 26, 2013

Josh Hudson

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2013, I filed the foregoing **VERIFIED COMPLAINT AND PETITION TO COMPEL ACCESS TO BOOKS AND RECORDS** with the Clerk of Court, with copies being hand delivery, by messenger, upon the following:

GoGoCast, Inc.
c/o David R. Paolo, Registered Agent
161 Comstock Parkway
Cranston, RI 02921

Mr. David R. Paolo
CEO, President and Director
GoGoCast, Inc.
161 Comstock Parkway
Cranston, RI 02921

Mr. Greg Argyle
COO and Director
GoGoCast, Inc.
161 Comstock Parkway
Cranston, RI 02921

/s/ William M. Gantz

81420764